```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

ATKORE INTERNATIONAL, ATKORE )
INTERNATIONAL GROUP, and ALLIED )
TUBE & CONDUIT CORP., )
)
    Plaintiffs, )
)
)
)
)
    v. ) No. 18 C 6308
)
)
PATRICK FAY and LINEAR )
SOLUTIONS, INC., )
)
    Defendants. )
)

<u>Memorandum Opinion and Order</u>

In this action, plaintiffs—to which I refer collectively as "Atkore"[1]—sue their former employee, Patrick Fay, and his company Linear Solutions, Inc., for violation of the Lanham Act and Illinois statutory law. Atkore also claims that Fay breached the restrictive covenants contained in three agreements governing the parties' relationship, and they seek specific performance of those covenants. Before me is defendants' motion to dismiss the complaint, which I grant in part as follows.

---

[1] Although several related entities bring this lawsuit, the distinctions among them are immaterial for present purposes.

Atkore manufactures and distributes a variety of electrical support system products, including rigid conduit and aluminum conduit. Fay was employed by Atkore from November of 2013 to July of 2018. His duties included the sourcing and procurement of materials used in Atkore's products, and, later, the supervision of manufacturing operations. Atkore alleges that in these capacities, Fay obtained Atkore's "confidential and proprietary information including materials and suppliers sourcing processes, and [Atkore's] confidential business methodology used to optimize sales margins and obtain market position." Compl. at ¶ 20. Atkore claims that since his termination, Fay has used this information to compete unlawfully with Atkore Linear Solutions. On September 20, 2018, Atkore moved for a temporary restraining order and preliminary injunction. I took their motion under advisement after hearing, pending resolution of defendants' motion to dismiss.

A. Lanham Act and Illinois Deceptive Trade Practices Claims

In their complaint, Atkore claims that defendants violated the Lanham Act and 815 ILCS 510/2(a) by displaying, on Linear Solutions's website, photographs and video of Atkore's products and facilities, "misleading all who visit the site into believing that [Linear Solutions] has facilities and capabilities comparable to [Atkore's]," and "passing off" Atkore's products and services as their own. At the hearing on Atkore's preliminary injunction motion, defendants represented that they have removed the

2

challenged photographs and videos—which they do not dispute depicted Atkore's products and facilities—from Linear Solutions' website; but they do not seek dismissal of plaintiffs' claims on that basis. Instead, defendants argue that the claims are legally insufficient for failure to plead adequately a likelihood of confusion. But even assuming, as both parties appear to do, that these claims are subject to the heightened pleading requirements of Rule 9(b), defendants' arguments and authorities do not support dismissal under Rule 12(b)(6) on the allegations here. Defendants also insist that the contents of Linear Solutions's website does not disparage Atkore's products or services and argue that statements of opinion and "puffery" are not actionable under federal or state competition laws. But these arguments do not respond to the gravamen of Atkore's complaint, which is not based on disparagement or puffery but instead challenges defendants' depiction of Atkore's own products and facilities on defendants' website, falsely suggesting an association between the parties or their products and services. None of the defendants' cases supports dismissal of plaintiffs' federal or state statutory claims on the facts alleged. Accordingly, their motion is denied as to these claims. Given defendants' in-court representations, however, the parties are urged to consider whether these claims may be resolved without further litigation.

B. <u>Contracts Claims</u>

Defendants seek to dismiss the remainder of Atkore's claims, all of which are grounded in the restrictive covenants contained in the parties' contracts, for two overarching reasons. First, that two of the three agreements Atkore asserts—the Employment Agreement the parties signed upon Fay's hire, and the "RSU Agreement" they executed in conjunction with Atkore's grant of restricted stock to Fay—were superseded by the Separation Agreement they signed upon Fay's termination. Second, defendants argue that the non-solicitation clause in the Separation Agreement is unenforceable because it is overbroad and "built to scare" rather than to protect Atkore's legitimate business interests. Both arguments have merit.

It is plain from the face of the Separation Agreement that its provisions supersede those established in the parties' previous agreements. The Separation Agreement contains two separate paragraphs entitled "Entire Agreement." Paragraph 6 provides:

> 6. **<u>Entire Agreement</u>**. Employee and the Company each acknowledge and agree that the other previously has satisfied any and all obligations owed to it under any employment agreement or offer letter Employee has with the Company and, further, that *this Agreement fully supersedes any prior agreements or understandings, whether written or oral, between the parties.* Employee acknowledges that, except as set forth expressly herein, neither the Company, the Releasees, nor their agents or attorneys have made any promise, representation, or

> warranty whatsoever either express or implied, whether written or oral.

Compl., Exh. C at 6 (italics added). In addition, paragraph 17 states:

> 17. **Entire Agreement**. *This Agreement sets forth the entire agreement between Employee and the Company and supersedes any and all prior written or verbal discussions, agreements, or understandings between the parties pertaining to the subject matter hereof.* The parties agree that no other promises have been offered for this Agreement (other than those described herein). No modifications of this Agreement shall be legally binding unless made in writing and signed by both parties.

*Id.* at p. 8 (italics added). Each of these provisions expressly acknowledges the parties' previous agreements and affirmatively states that they are superseded.

Atkore insists that the Separation Agreement does not supersede the earlier agreements because it does not cover the same subject matter, observing that the Separation Agreement lacks "a non-compete clause like those contained" in the earlier agreements. Resp. at 3. This argument might find some traction if the Separation Agreement were either silent or ambiguous with respect to how its provisions bear upon the parties' rights and obligations under their previous agreements, but it is not. To the contrary, the Separation Agreement clearly states that the parties' earlier agreements are "superseded," and Paragraph 6 goes further still, acknowledging that as of the execution date of the Separation Agreement, each party had satisfied its respective

5

obligations under the earlier agreements. Accordingly, the Separation Agreement unambiguously extinguishes any claims the parties might have had under the earlier agreements and became the exclusive agreement governing the parties' post-separation conduct. *See Avery Dennison Corp. v. Naimo*, No. 06 C 3390, 2006 WL 3343762, at *2-*3 (N.D. Ill. Nov. 16, 2006) (Grady, J.) (separation agreement unambiguously superseded employment agreement where separation agreement expressly provided that it "supersedes all previous agreements, including, without limitation, the Employment Agreement…").

Atkore's insistence that the Separation Agreement was negotiated and signed "for different purposes in exchange for different forms of consideration," Resp. at 3, does not alter the analysis. Indeed, Atkore fails to explain why separate consideration should affect the construction of the Separation Agreement's express terms stating that the earlier agreements are superseded.

In addition, I agree with defendants that the non-solicitation provisions of the Separation Agreement are unenforceable as a matter of law. They state:

> (b) Non-solicitation. During Employee's employment with the Company or a subsidiary of the Company and for the one (1) year period thereafter, Employee agrees that Employee will not, directly or indirectly, individually or on behalf of any other person, firm, corporation, or other entity, knowingly solicit, aid, or induce (i) any employee of the Company or any of its subsidiaries or

affiliates (as defined by the Company) to leave such employment in order to accept employment with or render services to or with any other person, firm, corporation, or other entity unaffiliated with the Company or knowingly take any action to assist or aid any other person, firm, corporation, or other entity in identifying or hiring any such employee or (ii) any customer or prospective customer of the Company or any of its subsidiaries or affiliates to purchase goods or services then sold by the Company or any of its subsidiaries or affiliates from another person, firm, corporation, or other entity or assist or aid any other persons or entity in identifying or soliciting any such customer; or (iii) interfere with or attempt to interfere with the relations between the Company and any employee, customer, agent, representative, vendor, supplier, corporate partner or collaborator of the Company.

Compl., Exh. 3 at 5.

Under Illinois law, "[a] restrictive covenant, assuming it is ancillary to a valid employment relationship, is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer-promisee; (2) does not impose undue hardship on the employee-promisor; and (3) is not injurious to the public." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (2011). In particular, a non-solicitation clause is valid only if it is:

> reasonably related to the employer's interest in protecting customer relations that its employees developed while working for the employer…. As a result, courts are reluctant to enforce provisions that prohibit former employees from servicing customers that they never had contact with while working for their original employer.

7

*Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 879 N.E. 2d 512, 528-29 (Ill. App. Ct. 2007) (internal quotation marks and citations omitted).

Plaintiffs allege that defendants violated the non-solicitation clause in the Separation Agreement by knowingly soliciting Atkore's customers or prospective customers to purchase goods or services sold by Atkore. As it is written, the non-solicitation clause precludes Fay from soliciting not only Atkore's customers with whom he had contact in the course of his employment, but also Atkore's customers with whom he had no contact, and even Atkore's *prospective customers*, i.e., individuals and entities that may never have done business with Atkore at all. That restriction is plainly far broader than necessary to protect Atkore's legitimate business interests. *See Cambridge Eng'g.*, 879 N.E. 2d at 528 (non-solicitation clause that extended broadly to "any customer, employee or representative" of the employer regardless of whether the defendant had contact with them as the plaintiff's employee" was "invalid on its face"). *See also AssuredPartners, Inc. v. Schmitt*, 44 N.E. 463, 474-75 (Ill. App. Ct. 2015) (non-solicitation clause that prohibited former employee "from working in the future with customers, suppliers, and other business entities which he never had contact with while working for" the plaintiff was "unenforceable as a matter of law"); *Lawrence and Allen, Inc., v. Cambridge Human Resource Group, Inc.,*

8

685 N.E. 2d 434, 441 (Ill. App. Ct. 1997) ("[c]ourts are hesitant to enforce prohibitions against employees servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed by plaintiff.").

Atkore insists that further factual development is necessary to assess the reasonableness of the non-solicitation provisions because the analysis requires an examination of the "totality of the facts and circumstances of the individual case." Resp. at 8 (citing *Allied Waste Servs.*, 177 F. Supp. 3d at 1110, and cases cited therein). It is true that in *Reliable Fire Equipment*, the Supreme Court of Illinois rejected a per se rule for determining the reasonableness of a restrictive covenant in favor of a context-specific inquiry that takes into account factors including "the near-permanence of customer relationships, the employee's acquisition of confidential information through his employment, and time and place restrictions." 965 N.E. 2d at 403. But even assuming that discovery in this case would confirm that Fay indeed acquired confidential information during his employment, the overbreadth of the non-solicitation clause is evident on its face: not only does it lack territorial boundaries, it bars Fay's solicitation of "any actual *or potential* customers" (among other individuals and entities), Resp. at 10, thus sweeping in all customers with whom Atkore presently does business, as well as

9

any person or entity anywhere in the world with whom Atkore could *potentially* do business in the future. It is difficult to see how facts uncovered in discovery could narrow the scope of this restraint. Nor does Atkore explain how evidence of Fay's negotiation of certain modifications to the Separation Agreement (none of which relates to the scope of the non-solicitation provisions) cures this fatal defect.

For the foregoing reasons, defendants' motion to dismiss is granted as to Atkore's contracts claims. The parties are directed to meet and confer, prior to the next status hearing, to determine whether Atkore's claims under the Lanham Act and 815 ILCS 510/2 can be resolved without further litigation. Atkore's motion for a preliminary injunction is denied.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: November 29, 2018